**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KEVIN D. INGRAM,

    Plaintiff/Counter-Defendant,

v.                                         Case No. 06-CV-14085-DT

HARTFORD INSURANCE CO. of the
MIDWEST,

    Defendant/Counter-Plaintiff.

                                             /

**ORDER GRANTING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT . . ."**

Pending before the court is Defendant Hartford Insurance Company's January 4, 2007 "Motion for Summary Judgment . . . ." The matter has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). The court further concludes than an evidentiary hearing to determine Plaintiff Kevin D. Ingram's residency will not be required.[1] For the reasons stated below, the court will grant Defendant's motion.

**I.  INTRODUCTION**[2]

Plaintiff, who was in a car accident as described below, filed his claims for no-fault insurance benefits and for uninsured motorist benefits in state court. On September 18, 2006, Defendant removed the case to federal court, invoking the court's

---

[1] In an order scheduling preliminary proceedings, the court requested that the parties indicate whether an evidentiary hearing would be necessary. (11/22/06 Order at 1.) Defendant professed no need for an evidentiary hearing, (Def.'s Rep. Br. at 18), and Plaintiff did not address the question.

[2] The court will present the factual background of this case in the discussion section.

diversity jurisdiction. Defendant later filed a counterclaim for declaratory judgment, alleging, among other things, that Plaintiff is not entitled to any recovery under his mother and stepfather's insurance policy because he did not live with them in their residence at the time of the accident. (Def.'s Counter-Compl. at ¶ 32.) On January 4, 2007, Defendant moved for summary judgment on the grounds that Plaintiff's claim is barred under the terms of the insurance policy because he did not reside with the insured parties at the time of his accident.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can

properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

Under Michigan law and the terms of the insurance policy, Plaintiff must have been domiciled with his mother and stepfather, the policy holders, at the time of the accident. Generally, the determination of domicile is a question of fact. However, where, as here, the underlying facts are not in dispute, domicile is a question of law for the court. *Goldstein v. Progressive Cas. Ins. Co.,* 553 N.W.2d 353 (1996); *Williams v. State Farm Mut. Automobile Ins. Co.,* 509 N.W.2d 821 (1993). Several factors should be considered in determining domicile, and these factors should be weighed or balanced with each other because no one factor is determinative. *Univ of Michigan Regents v. State Farm Mut. Ins. Co.*, 650 N.W.2d 129 (2002).

The relevant factors in deciding whether Plaintiff was domiciled in the same household as his mother and stepfather, the insured, are: "(1) the subjective or declared intent of the claimant to remain indefinitely in the insured's household, (2) the formality of the relationship between the claimant and the members of the household, (3) whether the place where the claimant lives is in the same house, within the same curtilage, or upon the same premises as the insured, and (4) the existence of another place of lodging for the person alleging domicile." *Fowler v. Auto Club Insurance Assoc.*, 656 N.W.2d 856, 857 (Mich. Ct. App. 2002) (citing *Workman v. DAIIE,* 274 N.W.2d 373 (Mich. 1979)).

When considering whether a child is domiciled with the child's parents, other relevant indicia include: (1) whether the child continues to use the parents' home as the child's mailing address, (2) whether the child maintains some possessions with the parents, (3) whether the child uses the parents' address on the child's driver's license or other documents, (4) whether a room is maintained for the child at the parents' home, and (5) whether the child is dependent upon the parents for support. *Id.* at 857-58 (citations omitted).

The material facts of this case are not in dispute. On August 4, 2003, Plaintiff, a thirty-four-year-old man, was severely injured and rendered quadriplegic as a result of an automobile accident in Providence, Rhode Island. (Application for Benefits at 2, Pl.'s Ex. 2.) He claimed benefits under the no fault insurance policy of his stepfather and his mother, Thomas and Linda Williams. (*Id.*) The policy covers resident relatives of the Williamses. (Hartford Personal Auto Insurance Policy at 1, 8, Def.'s Ex. 3) ("Policy").

4

Plaintiff was released from prison in 1994 and moved in with the Williamses at their apartment on Kelly Road in Detroit. (Pl.'s Dep. at 27, Def.'s Ex. A.) The Williamses later moved to a house at 12840 Hayes Road, where Plaintiff claims he continued to maintain his residence until the date of the accident. (*Id.* at 27-28.) At his deposition, he was unable to recall the street address or the ZIP code of the Williamses' home. (*Id.* at 26, 29.) Plaintiff never paid rent to them. (*Id.* at 28; Linda Williams Dep. at 52, Def.'s Ex. C.) He denies that he was financially dependent on them before the accident. (Pl.'s Dep. at 44.)

At the time of the accident in August 2003, Michigan had on record for Plaintiff an identification card with an expiration date of December 28, 2003 that bore the address of the Kelly Road apartment. (Identification Card, Def.'s Ex. 5.) Plaintiff's brief asserts that the reverse of his identification card bore a sticker changing the address to the residence on Hayes Road, (Pl.'s Br. at 2; Pl.'s Ex. 4). Nothing in the record, however, connects the photocopy of that sticker -- which does appear to be consistent with a Michigan Identification or Operator's Permit change of address form -- to *Plaintiff's* identification card. Even viewed in the light most favorable to Plaintiff, the photocopied change of address is inconclusive.[3] Plaintiff can no longer locate his Michigan

---

[3]The photocopy of the purported reverse is larger in size and darker than the photocopy of the front of Plaintiff's identification card. The photocopies thus appear to have been made at different times, under different conditions or on different copiers, a conclusion further bolstered by the facsimile transmission "stamp" atop the photocopy of the front (not readily visible in the electronically scanned court record), which reads "1 of 1" (Pl.'s Ex. 4). Finally, it appears in the second photocopy that an additional card, perhaps an identification card or a driver's licence, was on the copy platen at the time the image of the purported reverse was made. The nature of that additional card is unknown since all but one corner is obscured. In sum, this ID Card-with-purported-change-of-address-sticker exhibit is a rather odd and entirely unconvincing assemblage

identification card. (Pl.'s Dep. at 41-42.) Further, as late as November 28, 2006, the Michigan Department of State reported that Plaintiff's address is at the same Kelly Road apartment, indicating to the court that the purported official change of address discussed immediately above never occurred. (Bureau of Driver and Vehicle Records Record Lookup, Def.'s Ex. 1.) No evidence before the court shows that any governmental agency in Michigan recorded Plaintiff as living at the Hayes address at the time of the accident.

Defendant, meanwhile, has presented driving records of Plaintiff in Rhode Island. A certified record from Providence Municipal Court records a moving violation in June 2000 by Plaintiff and an address for him in Central Falls, Rhode Island, which suggests that, at that time, Plaintiff presented proof of Rhode Island residence to police. (RI Court Record, Def.'s Ex. 29.) He received other traffic tickets in Rhode Island. (Pl.'s Exs. 20, 23.) Further, Plaintiff obtained a Rhode Island identification card on November 1, 2000, a photocopy of which is attached to Defendant's reply brief. (Pl.'s RI Identification Card, Def.'s Ex. 33.) The card was not set to expire until 2005. (*Id.*)

Plaintiff presents a very few mailings addressed to him and received at the Hayes address. Among them are an August 30, 2002 mailing from the Social Security Administration, "junk mail" coupons from the Detroit MGM Casino valid in December 2003 and an undated document that purports to be Plaintiff's W-2 income tax information from B.K. Tool Inc. (Mail, Pl.'s Exs. 6 & 17.)[4]

---

of images.

[4]As explained below, the court is not familiar with the form of this purported W-2.

Plaintiff avers that he went to Rhode Island to attend a family reunion, to try to find a job there and to settle down there once he found employment. (Pl.'s Dep. at 14-15, 17.) In the wake of a previous car accident in Rhode Island in 2001, records indicated that Plaintiff claimed residence in Providence. (2001 Accident Records, Def.'s Ex. 22.)

Marty White, Defendant's investigator, averred that he spoke with Darlene Walker, Plaintiff's cousin in Rhode Island, and learned the following. (White Aff. at ¶¶ 1-2.)[5] Plaintiff moved to Rhode Island in September 2002 after his grandmother died and began living in the grandmother's house and would occasionally stay with her or with his girlfriend. (*Id.* at ¶¶ 2, 6.) Plaintiff received mail at Walker's residence before and after the accident and Walker forwarded it to Plaintiff's mother. (*Id.* at ¶ 2.)

After the accident, several records, particularly medical records, indicate a number of Rhode Island mailing addresses for Plaintiff. (Bills and Records, Def.'s Exs. 7-9, 11-13.) Plaintiff contends that his relatives gave these addresses and that they do not reflect his domicile. (Pl.'s Br. at 2.) But he presents no sworn statements from any of these relatives or other proof that they were present when the information was obtained and recorded. In particular, the ambulance report indicates a Rhode Island address for Plaintiff, (Ambulance Report, Def.'s Ex. 6), and there is no indication on the report that any of Plaintiff's family members were present at the scene of the accident.

---

[5]Defendant states that Walker has avoided service of process and therefore White's hearsay evidence is admissible under Federal Rule of Evidence 807. The court is satisfied that the terms of Rule 807 are met and that the White evidence may be considered. The evidence, in any event, is not crucial to the court's analysis or its determination that Defendant is entitled to summary judgment.

Plaintiff's four oldest children are in Michigan. (Pl.'s Dep. at 134, 139.) He has two younger children in Rhode Island, one a newborn at the time of the accident and the other conceived one month before the accident, although Plaintiff expressed some doubt regarding paternity of the latter. (*Id.* at 134-137.) He moved one of his older children to Providence to enroll him in school in about April 2003. (Linda Williams Dep. at 18-19.) Records from the Providence Public schools name Plaintiff as the father and an address in Providence as the son's place of residence. (Providence School Records, Def.'s Ex. 18.) Finally, Plaintiff kept clothes in various residences in Rhode Island, including when he would leave that State. (Pl.'s Dep. at 19-20, 23.)

The above facts, taken in the light most favorable to Plaintiff, fail to establish a genuine issue of fact concerning whether Plaintiff lived at the Hayes address at the time of the accident. While proving precisely where Plaintiff lived at the time may be difficult, Defendant need not go that far for purposes of its summary judgment motion. Rather, Defendant need only show that no reasonable finder of fact could conclude that Plaintiff lived at the Hayes address on August 4, 2003. Defendant has met this burden.

Plaintiff's own deposition testimony reveals that he had a settled plan to move to Rhode Island and seek work. His intent to change his domicile hinged upon the formation of the plan, not its fruition. *Fowler* gives weight to "the subjective or declared intent of the claimant to remain indefinitely in the insured's household." 656 N.W.2d at 856. As such, Plaintiff's plan to find work in Rhode Island means that at the time of the accident he had no subjective or declared intent to remain indefinitely with the Williamses at the Hayes household. Specifically, Plaintiff said the following:

8

> I was just basically going to try to find somewhere, you know – you could say yeah, if I would have – if I probably would have found a job, yeah, I probably would have, you know – I probably would have ended up moving down there [to Rhode Island] if I found job . . . . trying to find somewhere to, you know, get comfortable and, you know, settle down at.

(Pl.'s Dep. at 14.)  Plaintiff responded in the affirmative when asked if he went to Rhode Island to make a home.  (*Id.*)  Whether Plaintiff actually found work in Rhode Island is irrelevant.  He in any event presents no binding authority stating that he must have first completed his plan before he could change his domicile.[6]

Plaintiff had no formal rental agreement with the Williamses for staying at the Hayes address.  He denied having any financial dependence on them.  While he kept some clothing at their address, he also left clothing and other items in Rhode Island.  Further, the myriad records from Rhode Island indicate nothing to the court regarding whether Plaintiff lived at the Hayes address; indeed, they weigh fairly strongly in favor of Rhode Island as his domicile.  In the absence of sworn declarations saying that Plaintiff's relatives recorded their own addresses in those documents on Plaintiff's behalf but for the sake of convenience, the court cannot ignore the probative value of those documents on their face.  In particular, no evidence supports a conclusion that some member of Plaintiff's family provided a Rhode Island address for Plaintiff to those who filled out the ambulance report.  Perhaps most damaging is the uncontroverted fact Rhode Island issued Plaintiff an identification card in 2000, well before the accident, and

---

[6]The court doubts that such authority exists.  For example, in the context of determining domicile for jurisdictional purposes, the requirements is "only the occurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere."  *Holmes v. Sopuch*, 639 F.2d 431, 433 (8th Cir. 1981).

9

it was not set to expire until 2005, well after the accident.  The presence of Plaintiff's children in Rhode Island, including one who moved there from Detroit and enrolled in Providence schools while claiming a Providence address, is also strongly probative of a domicile elsewhere than Michigan.

The countervailing evidence Plaintiff presents fails to create a question of fact. The deposition testimony finds no corroboration in the record.[7]  Plaintiff's Michigan identification card records him as living on Kelly Road, and the photocopied change of address sticker that shows Hayes Street is not connected to the part of the card that bears his image and the old, Kelly Road address.  More importantly, no official state or local record indicates that Plaintiff ever registered himself as living at the Hayes address.  Instead, the most recent records from the Michigan Secretary of State show that Plaintiff's address is at the Kelly Road apartment.  The mail that he received at the Hayes address is scant and inconclusive.  The letter from the Social Security Administration predates the accident and relates to income that could be years old. Similarly, the MGM mailing, even when viewed in conjunction with the other evidence, falls short of showing that Plaintiff maintained his residence at the Hayes address (the number of which, according to his own deposition, he could not recite, nor the ZIP code

---

[7]While deposition testimony can often stand on its own independent of corroboration, under the circumstances of this case, the deposition testimony in favor of Plaintiff's position is insufficient.  *See Liberty Lobby, Inc.*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff.")

associated with that community).[8]  The W-2 form, finally, is anything but an officially produced IRS document.  The W-2 designation is handwritten, the document bears no date and its origin is unclear.  It carries no probative value concerning the question of Plaintiff's domicile at the time of the accident.

In sum and in light of the undisputed facts before the court, the factors set out in *Fowler*, 656 N.W.2d 856, weigh conclusively against Plaintiff.  Because he did not reside at the Hayes address at the time of the accident, he is entitled to no coverage under the terms Defendant's insurance policy.  The court must therefore grant Defendant's motion for summary judgment.[9]

---

[8] The court does not endeavor to weigh the credibility of Plaintiff's testimony in noting these points. On the contrary, it simply assumes the truth of Plaintiff's statement that he could recall neither the street address nor the ZIP code of the Hayes residence. Similarly, the court credits Plaintiff's testimony in his deposition that he lied regularly and repeatedly to police officers in Rhode Island and Michigan when stopped for traffic violations and asked to provide his address, thus accounting for a myriad of non-Hayes "residence" records. That he repeatedly lied about his address, however, does not constitute positive evidence that assists Plaintiff in establishing that he in fact resided at the address on Hayes.

[9] Though Defendant's counter-claim seeks several forms of relief that this opinion and order does not grant, the court has granted Defendant full relief and it need not reach those other issues.  Specifically, because the Williamses are not parties to this case, the court will make no declaration concerning their rights under the insurance policy.  The court will not award attorney fees and costs, as Defendant has presented no authority for that relief.  The court will issue a separate judgment closing this case.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion for Summary Judgment . . ." [Dkt # 17] is GRANTED.

     S/Robert H. Cleland
     ROBERT H. CLELAND
     UNITED STATES DISTRICT JUDGE

Dated:  February 23, 2007


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 23, 2007, by electronic and/or ordinary mail.

     S/Lisa Wagner
     Case Manager and Deputy Clerk
     (313) 234-5522